IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| MARK E. LYNCH and wife, | ) | |
| CYNTHIA J. LYNCH, | ) | |
| | ) | |
|     Plaintiffs | ) | |
| | ) | |
| v. | ) | No. 3-04-0445 |
| | ) | Judge Trauger |
| NISSAN NORTH AMERICA, INC. | ) | |
| | ) | |
|     Defendant. | ) | |

**MEMORANDUM**

Pending before the court is the Motion for Summary Judgment filed by the defendant, Nissan North America, Inc. (hereinafter "Nissan") (Docket No. 14), to which the plaintiffs, Mark E. Lynch and wife, Cynthia J. Lynch, have responded (Docket No. 29), and the defendant has replied (Docket No. 36). After the plaintiffs' request for further discovery (Docket No. 29) was granted by Order entered June 10, 2005 (Docket No. 39), the plaintiffs filed a Supplemental Response to Defendant's Motion for Summary Judgment (Docket No. 40), to which the defendant has replied (Docket No. 45). For the reasons expressed herein, the defendant's motion will be granted.

**I. FACTS and PROCEDURAL HISTORY[1]**

In 2002, defendant Nissan, which owns a manufacturing facility in Smyrna, Tennessee, launched the X61B Project, which involved the addition of one vehicle model, the "Pathfinder,"

---

[1]Unless otherwise noted, the facts are drawn from the Complaint (Docket No. 1) and the Plaintiffs' Response to the Defendant's Statement of Undisputed Facts (Docket No. 34).

1

to the manufacturing process, as well as the complete revamping of two other vehicle models, the "Xterra" and "Frontier." (Docket No. 17, Affidavit of Randy D. Norris, ¶ 4) As a result of this project, it became necessary to renovate the Smyrna manufacturing plant. As part of this renovation, Nissan hired various companies to work on the construction project. NKC of America, Inc. (hereinafter "NKC") was one of several contractors that worked on the conveyor portion of the construction project. The conveyor portion of the project represented approximately twenty to twenty-five percent of the total budget for the renovation construction project.

On May 23, 2003, plaintiff Mark Lynch, an employee of NKC, was seriously injured when he fell off of a catwalk, about twenty to thirty feet above ground level, while working on the project. On June 11, 2003, Lynch brought suit against NKC and Nissan in Wilson County, Tennessee, for workers' compensation benefits, claiming that at the time of his injury, he was employed by both NKC and Nissan and working for their benefit at the property of Nissan. (Docket No. 17, Ex. 3) Thereafter, the state court dismissed Nissan as a defendant, finding that the plaintiff was an employee of NKC at the time of his injury, was currently receiving workers' compensation benefits from NKC's workers' compensation insurance provider, Liberty Mutual Insurance Company, and was not an employee of Nissan North America, Inc. (*Id*. Ex. 2) The plaintiffs do not dispute that Mark Lynch's immediate employer, NKC, has workers' compensation insurance that covers the injuries arising out of his fall at the Nissan manufacturing plant.

On May 20, 2004, Mark Lynch and his wife, Cynthia, filed a Complaint in this court against Nissan, alleging that the defendant knew or should have known that the bar railing fastened to the catwalk was negligently mounted, which proximately resulted in the injuries he

2

suffered. The plaintiffs also claim that the defendant caused a delay in the treatment of Mark Lynch, which resulted in further injury. Plaintiff Cynthia Lynch brings a related claim for loss of consortium.

Nissan's Motion for Summary Judgment (Docket No. 14) asserts that the plaintiffs' claims are barred by the exclusivity provision of the Tennessee Workers' Compensation Act, Tenn. Code Ann. § 50-6-108, because there is no genuine issue of material fact as to whether Nissan was acting as a "principal contractor" within the purview of Section 50-6-113 and as to whether the plaintiff was injured on premises that were under Nissan's management or control as the principal contractor.

## II. ANALYSIS

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). "The court's function is not

to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which she has the burden, however, the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999). To preclude summary judgment, the nonmoving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 430 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49).

**B.     Exclusivity of Workers' Compensation and Immunity from Tort Liability**

The Tennessee Workers' Compensation Act, Tenn. Code. Ann. § 50-6-108 (1999), requires an employer to compensate an employee for injuries he sustains on the job, even if those injuries are not a result of employer negligence. *Mathis v. Bowater Incorp.*, 985 F.2d 277, 278 (6th Cir. 1993). "In turn, the employee is barred from recovering damages from his employer for

4

injuries resulting from his employer's negligence making workers' compensation benefits the employee's exclusive remedy." *Id.*, 985 F.2d at 279 (citing *Posey v. Union Carbide Corp.*, 705 F.2d 833, 834 (6th Cir. 1983)). Thus, the Workers' Compensation Act is a complete substitute for an employee's common law remedies against an employer for work-related injuries. *Newman v. Nat'l Union Fire Insur. Co.*, 786 S.W.2d 932, 935 (Tenn. 1990).

Under Tennessee law, the responsibility to provide workers' compensation benefits, and the resulting immunity from tort liability, extends beyond the direct employer and the traditional employer-employee relationship to principal, intermediate contractors and subcontractors. Section 50-6-113 of the Tennessee Code provides, in pertinent part:

> *Principals, intermediate contractors, or subcontractors; liability*
>
> (a) A principal, or intermediate contractor, or subcontractor shall be liable for compensation to any employee injured while in the employ of any of the subcontractors of the principal, intermediate contractor, or subcontractor and engaged upon the subject matter of the contract to the same extent as the immediate employer.
> ...
> (c) Every claim for compensation under this section shall be in the first instance presented to and instituted against the immediate employer, but such proceedings shall not constitute a waiver of the employee's right to recover compensation under this chapter from the principal or intermediate contractor; provided, that the collection of full compensation from one (1) employer shall bar recovery by the employee against any others, nor shall the employee collect from all a total compensation in excess of the amount for which any of the contractors is liable.
>
> (d) This section applies only in cases where the injury occurred on, in, or about the premises on which the principal contractor has undertaken to execute work or which are otherwise under the principal contractor's control or management.

In accordance with these provisions, "if a subcontractor's employee is injured on premises under the principal contractor's control, the principal contractor is liable to that employee to the same extent as the subcontractor. That principal contractor, however, is immune to tort actions of that injured employee to the same extent as the subcontractor." *Mathis*, 985 F.2d at 279. "The

5

purpose of the statute is to insure as far as possible to all workers payment of benefits when they are injured in the course and scope of their employment by passing coverage from employers who might not have coverage under the Workers' Compensation Act to intermediate or principal contractors who do have coverage." *Acklie v. Carrier*, 785 S.W.2d 355, 357 (Tenn. 1990). As a result, employers are prevented from contracting out normal work simply to avoid liability for workers' compensation. *Stratton v. United Inter-Mountain Telephone*, 695 S.W.2d 947, 951 (Tenn. 1985).

Here, the plaintiff's direct employer, NKC, does have workers' compensation insurance that covers Lynch's injuries arising out of his fall at the Nissan manufacturing plant. (Docket No. 34, Response to Defendant's Statement of Undisputed Facts, ¶ 13) However, Nissan claims that, had NKC been uninsured, Nissan would have been responsible for paying the plaintiffs' workers' compensation benefits, because it was acting as a principal contractor in connection with the project. Therefore, according to Nissan, it is entitled to the same immunity from tort liability as NKC, and summary judgment should be granted in its favor as to all claims.

C.    **Judicial Estoppel**

The plaintiffs contend that Nissan should be judicially estopped from relying on the exclusivity provisions of the Tennessee Workers' Compensation Act because, in Mark Lynch's related workers' compensation case, the judge found that Lynch was not an employee of Nissan and dismissed Nissan from the action with prejudice. According to the plaintiffs, "[i]f Nissan was to be subject to the exclusivity of the provisions of the Tennessee Workers' Compensation Act, then it should not have chosen to seek dismissal from the State Court action." (Docket No. 30)

The rule of judicial estoppel holds that,"where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)). This equitable doctrine "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase," *Id*. (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n. 8 (2000)), and its purpose is "to protect the integrity of the judicial process." *Id*. (quoting *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir. 1982)).

In *New Hampshire*, while observing that "[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation or principle," the Supreme Court identified several factors that typically inform the decision of whether to apply the doctrine in a particular case: (1) a party's later position must be "clearly inconsistent" with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party's earlier position, "so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first of the second court was misled;" and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." 532 U.S. at 750–51 (internal citations omitted).

Here, it is undisputed that, on June 11, 2003, plaintiff Mark Lynch brought suit against NKC and Nissan in Wilson County, Tennessee, for workers' compensation benefits, claiming that, at the time of his injury, he was employed by both NKC and Nissan and working for their

7

benefit at the property of Nissan. (Docket No. 17, Ex. 3) Thereafter, on September 8, 2003, defendant Nissan filed a Motion to Dismiss on the following grounds:

> Plaintiff is an employee of NKC Conveyor Installation Company who is insured for purposes of the Workers' Compensation Act by Liberty Mutual Insurance Company. Therefore, Nissan North America, Inc. is not a proper defendant and should be dismissed with prejudice from this action.

(*Id.*, Ex. 4) By Order dated December 15, 2003, the Honorable Judge James O. Bond granted Nissan's Motion to Dismiss, finding that:

> 1. Plaintiff, at the time of this injury, was an employee of NKC Conveyor Installation Company;
>
> 2. Plaintiff is receiving workers' compensation benefits from Liberty Mutual Insurance Company;[2]
>
> 3. Plaintiff is not nor was on the day of the injury an employee of Nissan North America, Inc.;
>
> 4. This lawsuit involves Plaintiff's entitlement to workers' compensation benefits only; and therefore,
>
> 5. Nissan North America, Inc., shall be dismissed from this lawsuit with prejudice.

(*Id.*, Ex. 2) On January 31, 2005, Nissan filed the Motion for Summary Judgment currently before the court, arguing that the plaintiffs' claims for negligence and loss of consortium are barred by the exclusivity provision of the Tennessee Workers' Compensation Act, Tenn. Code. Ann. § 50-6-108, because there is no genuine dispute as to any material fact that Nissan was a principal contractor within the purview of Tenn. Code Ann. § 50-6-113.

---

[2]The plaintiff does not dispute that its immediate employer, NKC, has workers' compensation insurance that covers Lynch's injuries arising out of his fall at the Nissan manufacturing plant. (Docket No. 34, Response to Defendant's Statement of Undisputed Facts, ¶ 13)

8

Here, the position taken by Nissan in response to the plaintiff's workers' compensation suit is not inconsistent with its current position that it is immune from common law liability pursuant to Sections 50-6-108 and 50-6-113 of the Tennessee Workers' Compensation Act.[3] In moving for dismissal, Nissan relied only upon the fact that the plaintiff's immediate employer was NKC, that the plaintiff could, indeed, recover workers' compensation from his immediate employer because NKC carried workers' compensation insurance, and that Nissan was not the plaintiff's actual, immediate employer. Under Section 50-6-113(c), every claim for workers' compensation must, in the first instance, be presented to, and instituted against, the *immediate* employer. In state court proceedings, the judge determined that NKC, rather than Nissan, was the plaintiff's actual employer. As a result, Nissan's liability as a potential principal contractor, or statutory employer, under Section 50-6-113 would arise only if the plaintiff could not collect full workers' compensation benefits from his actual, immediate employer, NKC. Because the court also determined that NKC had workers' compensation insurance coverage and that the plaintiff was receiving his benefits therefrom, Nissan was properly dismissed as a defendant, and the court never reached the issue of whether Nissan qualified as a statutory employer or, more specifically, a "principal contractor."

In addition, Nissan has derived no unfair advantage nor imposed an unfair detriment upon the plaintiffs as a result of its dismissal from the plaintiff's workers' compensation suit. Section 50-6-113(c) expressly provides that the institution of a claim for compensation first against the

---

[3]In fact, a far stronger argument exists that the *plaintiffs* have taken inconsistent positions. In his prior suit for workers' compensation benefits, Mark Lynch alleged that he was employed by both NKC and Nissan, and, therefore, owed compensation from them for his workplace injuries. The plaintiff's previous claim that Nissan is liable under the Workers' Compensation Act is blatantly inconsistent with his current contention that the exclusivity provision of the Workers' Compensation Act does not apply to Nissan.

9

immediate employer, as required under the provision, does not constitute a waiver of the employee's rights to recover compensation from the principal or intermediate contractor. Such secondary recovery is implausible in this case, in view of the fact that NKC has workers' compensation insurance that covers Lynch's injuries arising out of his fall at the Nissan plant and, at the time of the state court's decision dismissing Nissan, the plaintiff was receiving workers' compensation benefits from NKC's insurance provider. For these reasons, the doctrine of judicial estoppel is inapplicable to the case at bar.

Because Nissan is not judicially estopped from relying on the exclusivity provision of the Workers' Compensation Act, the court must next determine whether Nissan is a "principal contractor" within the purview of Section 50-6-113 and, therefore, subject to immunity from liability in common law.

### D. "Principal Contractor" Status

The owner of property may be considered its own principal contractor under certain circumstances. *Brown v. Canterbury Corp.*, 844 S.W.2d 134, 137 (Tenn. 1992). In *Stratton v. United Inter-Mountain Telephone*, 695 S.W.2d 947 (Tenn. 1985) the Tennessee Supreme Court delineated the factors for consideration in determining whether an owner is acting as its own principal contractor, or, in other words, whether an owner is a "statutory employer" :

> (1) right to control the conduct of work; (2) right of termination; (3) method of payment; (4) whether alleged employee furnishes own helpers; (5) whether alleged employee furnishes own tools; and (6) whether one is doing 'work for another.'

695 S.W.2d at 950. The *Stratton* court further explained that, while no single factor is dispositive, the "importance of the right to control the conduct of the work has been repeatedly emphasized." *Id*. In determining whether an owner has the right to control the conduct of the

10

work, "the test is not whether the right to control was exercised but merely whether this right to control existed." *Id.*

In *Acklie v. Carrier*, 785 S.W.2d 355 (Tenn. 1990), the Tennessee Supreme Court cited other aspects of being a principal contractor, in addition to the right to control. Concluding that an owner was acting as its own principal contractor, the court based its decision on the fact that:

> [The Company] selected the subcontractors, coordinated the work, made changes periodically in the plans and had work redone, and its own employees performed [many of the necessary] tasks.

Acklie, 785 S.W.2d at 358. In *Brown v. Canterbury Corp.*, 844 S.W.2d 134 (Tenn. 1992), the Tennessee Supreme Court again relied upon the above listed *Acklie* factors in concluding that an owner was a principal contractor for purposes of workers' compensation liability to an employee of a subcontractor. Rather than strictly applying these factors, however, the court adopted a "totality of the circumstances" approach, stating that, "we do not interpret *Acklie* to require that a plaintiff must establish all of the factors mentioned in that case in order to succeed on the merits." 844 S.W.2d at 138. The *Brown* court thus found that the fact that the owner did not have employees performing a substantial part of the manual work was not controlling on the outcome in that case. *Id.*

Here, it is undisputed that Nissan has a Facilities and Conveyor Engineering Department, which, according to Randy Norris, the Section Manager of the Department, manages construction projects and coordinates the work of companies performing work at the facility.[4] (Docket No. 18,

---

[4]According to the Job Description for the position of Section Manager of the Facilities and Conveyor Engineering Department, Norris "interfaces with outside contractors to coordinate activities and direct efforts regarding planning and scheduling of installation work; review contracted projects to ensure accuracy, quality, and timely completion." (Docket No. 48 ¶ 6, Ex. B)

11

¶¶ 1, 3)  In connection with the X61B Project, Norris stated that Nissan hired the various companies that worked on the project, including NKC, and that the Nissan Facilities and Engineering Department managed the progress of the work performed by these companies.  *Id*. ¶ 6.  Norris also stated that Nissan checked the work performed by the contractors on the renovation project and, when the work was determined to be defective, required the contractors to redo the work.  *Id*. ¶ 7.  When necessary, Nissan also made alterations to the plans for the renovation project.  *Id*. ¶ 8.

The agreements between NKC and Nissan further reflect that Nissan retained the right to change specifications or plans on the project, the right to reject NKC's work as being in breach of warranty, the right to compel NKC to redo work, and the right to require NKC to take steps necessary to improve the progress of the work by increasing workers on the job site or increasing the number of shifts worked if the progress was deemed inadequate.   Nissan also retained the right to terminate or fire NKC and to terminate the work in whole or in part "at its convenience." (Docket No. 21, Ex. 6 §§ 3(c),  5, 7, 9) And, finally, Nissan required NKC to provide workers' compensation coverage for all of its employees.  *Id*., Attach. A., § 5.1.

Where the facts are essentially undisputed, the question of whether one is a statutory employer, or, in this case, a "principal contractor," is one of law for the court.  *Pickel v. Beers Construction Co*., No. 01A01-9306-CV-00241, 1993 WL 545473, at * 2 (Dec. 30, 1993) (unpublished opinion) (citing *Stratton*, 695 S.W.2d at 953).   Here, however, the plaintiffs claim that there are disputed facts with respect to Nissan's status as a principal contractor because, first, the documents purportedly governing the relationship between Nissan and NKC are unsigned, and, second, because Nissan has failed to submit documentation supporting its assertions that it checked the work or managed the progress of the contractors.  (Docket No. 42)

12

To begin, Nissan has presented testimony that the submitted documents constitute the contract between NKC and Nissan with respect to the X61B Project. (Docket No. 47 pp. 27–34; Docket No. 18 ¶ 5) Furthermore, the documents themselves state that "the commencement of any work lor the performance of any services hereunder by Contractor... shall constitute acceptance by Contractor of this Contract of all its terms and conditions...." Thus, the fact that the documents are unsigned is irrelevant.

Finally, assuming that Norris' undisputed testimony that Nissan checked the work and managed the progress of NKC is insufficient support, the plaintiffs' latter assertion ignores the fact that it is the *right* to control or supervise the conduct of the work, not the actual exercise of that control, which is important in determining whether one is acting as a principal contractor. *Stratton*, 695 S.W.2d at 953.

In sum, the totality of the circumstances compel the conclusion that Nissan was acting as the "principal contractor" in connection with Project X61B. Having determined that Nissan was acting as a "principal contractor" within the meaning of the Workers' Compensation Act, it thereby follows that the present suit for negligence and loss of consortium cannot stand. Section 50-6-108 of the Tennessee Code expressly dictates that workers' compensation benefits are the plaintiffs' exclusive remedies. *See* Tenn. Code. Ann. § 50-6-108(a) ("The rights and remedies herein granted to an employee subject to the Workers' Compensation Law on account of personal injury or death by accident... shall exclude all other rights and remedies of such employee, such employee's personal representative, dependents or next of kind, at common law or otherwise, on account of such injury or death.") The conclusion in this case is consistent with the policy underlying the Tennessee Workers' Compensation Act and, specifically, Section 50-6-113. Here, as was the case in *Stratton*:

13

> Allowance of a common-law suit against the [defendant] after recovery of worker's [sic] compensation benefits from plaintiff's immediate employer would do violence to the comprehensive scheme of worker's [sic] compensation. It would eliminate the incentive of general contractors to hire insured subcontractors, which is part of the policy underlying the principal contractor provision. The worker's [sic] compensation law is a comprehensive scheme that reflects a compromise between the interests of employers and employees. It provides an expeditious and certain recovery for the employee while limiting the amount of liability to which the employer is exposed.

695 S.W.2d at 954 (internal citations and quotations omitted).

Finally, the fact that defendant Nissan was not actually held liable for worker's compensation benefits is irrelevant. *See Posey*, 705 F.2d at 838–839 ("the immunity granted... to those contractors because of their actual, or as here, potential liability for workmen's compensation serves to defeat appellants' tort liability claims."). In this case, the statutory purpose of seeking to provide a much more certain, even if far more limited, recovery has been served by the award of compensation against the insurer of the actual employer, NKC. *Id.* at 839.

### E.     Claims of Negligence Based on Events After Fall

The plaintiffs next argue that, at the very least, the defendant's Motion for Summary Judgment should not be granted as to the negligence claims regarding the conduct of Nissan and its employees and agents *after* Lynch fell from the catwalk at the Nissan plant. In other words, the plaintiffs contend that the claims that Nissan was negligent in causing a delay in the medical treatment of plaintiff Mark Lynch are separate and distinct from the claims of negligence against Nissan that actually contributed to the fall and severe injuries of Mark Lynch and, thus, "have absolutely nothing to do with" the exclusivity provisions of the Workers' Compensation Act.

14

In *McAlister v. Methodist Hospital of Memphis*, 550 S.W.2d 240 (Tenn. 1977), a hospital employee brought a common law action against the hospital, alleging that, after suffering a compensable on-the-job injury to her back, she received negligent treatment of this back injury from the hospital, resulting in additional injury. The hospital moved to dismiss on the ground that a proceeding under the Workers' Compensation Act was the plaintiff's exclusive remedy for both injuries. The court first concluded that the hospital was liable under the Workers' Compensation Act, not only for the initial injury, but also for the injury sustained as a result of the treatment of the initial injury, because "in the field of workmen's compensation law, and in suits by a worker against his employer, the initial injury is the cause of all that follows, even where there is superimposed upon the original injury, a new, or additional or independent injury during the course of treatment, negligent or otherwise." 550 S.W.2d at 245.

In considering whether such a remedy under the Workers' Compensation Act was exclusive, the Court rejected the "dual capacity doctrine"– which holds that an employer, normally shielded from tort liability, may become liable in tort if it occupies a secondary capacity that confers obligations independent of those imposed upon it as an employer– and concluded that "[n]othing in [the Workers' Compensation Act] may be construed to evince a legislative intent that an employer may ever be classified as a "third person," without doing violence to the plain language which permits common law suits against 'some person other than the employer.'" According to the court, the "employer is the employer; not some person other than the employer," and, therefore, the remedies provided in the Workers' Compensation Act are exclusive, and the employer cannot be sued in tort. *Id*. at 246.

As stated above, under Section 50-6-113, a "principal contractor" is liable to an injured employee for workers' compensation, and is subject to immunity in common law under the Act,

15

to the same extent as the immediate employer. Tenn. Code Ann. § 50-6-113(a). In accordance with *McAlister*, the plaintiffs would not be permitted to sue the immediate employer, NKC, in tort for secondary injuries resulting from the alleged negligent delay in treatment of the initial injury; thus, the plaintiffs may likewise not so sue Nissan. Whatever additional injuries, if any, that flowed from a delay in treatment must be a part of the total workers' compensation recovery from NKC.

### III. CONCLUSION

For the reasons expressed herein, the Motion for Summary Judgment (Docket No. 14) filed by defendant Nissan will be granted.

An appropriate order will enter.

_____
ALETA A. TRAUGER

United States District Judge

16